CLOSED, DLM

# U.S. District Court
## District of Rhode Island (Providence)
## CIVIL DOCKET FOR CASE #: 1:05-cv-00041-T
### Internal Use Only

Lynn v. Powell
Assigned to: Judge Ernest C. Torres
Demand: $0
Cause: 42:12101 Americans With Disabilities Act

Date Filed: 02/03/2005
Jury Demand: Plaintiff
Nature of Suit: 442 Civil Rights: Jobs
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**Michael G. Lynn**      represented by   **Bruce P. Gladstein**
750 East Ave.
Pawtucket, RI 02860
722-9900
Fax: 726-3406
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Colin Powell**      represented by   **Anthony C. DiGioia**
*Secretary of State for the United States of America*
US Attorney's Office
Fleet Center
50 Kennedy Plaza
8th Floor
Providence, RI 02903
709-5000
Fax: 709-5001
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/03/2005 | 1 | COMPLAINT filed; FILING FEE $ 150.00 RECEIPT # 59379 (McCabe, F) (Entered: 02/03/2005) |
| 02/03/2005 |   | CASE assigned to Judge Ernest C. Torres. Assigned to Magistrate Judge Martin (McCabe, F) (Entered: 02/03/2005) |
| 06/07/2005 | 2 | JOINT MOTION to Transfer Case to the District of Columbia by Michael G. Lynn, Colin Powell. Responses due by 6/21/2005 (Jackson, Ryan) (Entered: 06/10/2005) |

| 06/13/2005 | 2 | 2 MOTION to Transfer Case to the District of Columbia REFERRED to Judge Torres. (Jackson, Ryan) (Entered: 06/13/2005) |
|---|---|---|
| 06/27/2005 | 3 | ORDER granting 2 Motion to Change Venue . Signed by Judge Ernest C Torres on 6/24/05. (Jackson, Ryan) (Entered: 06/27/2005) |
| 06/27/2005 | | ***Civil Case Terminated. (Jackson, Ryan) (Entered: 06/27/2005) |

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

MICHAEL G. LYNN,
           Plaintiff

**CA 05 041 T**

vs.                                            Civil Action No.:

COLIN POWELL, SECRETARY OF STATE FOR THE
UNITED STATES OF AMERICA
           Defendant

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, MICHAEL G. LYNN ("Lynn"), brings this complaint against Defendant COLIN POWELL, SECRETARY OF STATE FOR THE UNITED STATES OF AMERICA ("State"), based on disability discrimination. Lynn seeks relief in accordance with Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 *et seq.*

### PARTIES

1. Lynn is a citizen of the United States and is an individual residing in Providence, Rhode Island.

2. Defendant Colin Powell is the Secretary of State for the United States of America and is named Defendant in this action as required by applicable regulations.

### JURISDICTION AND VENUES

3. All conditions precedent to jurisdiction under 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 12101 *et seq.*, 29 U.S.C. § 701 *et seq.*, have occurred or been complied with in that;

   a. On May 28, 2003, Lynn filed a charge of employment discrimination against the State, alleging that he was discriminated against because of disability.

   b. The charges were timely filed within 180 days of the State's commission of unlawful employment practices alleged herein.

   c. More than one hundred and eighty days has passed from the filing of such





charge; and

    d. Pursuant to 42 U.S.C. § 2000e –16(c) this complaint has been filed within 90 days of Lynn's receipt of the final decision concerning his charge of employment discrimination.

4. This court has jurisdiction over the subject matter pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, 28 U.S.C. § 1346, and 28 U.S.C. § 2000e – 16.

5. Venue is in this district pursuant to 28 U.S.C. § 1391 (b) (e), and 28 U.S.C. § 1402.

6. Lynn demands a jury trial on all claims asserted in this Complaint.

## GENERAL ALLEGATIONS

7. Plaintiff alleges that because of his disability (physical-epilepsy), he was denied an appointment as a Junior Officer in the Foreign Service.

8. Plaintiff's allegations were investigated by Robert Medler (hereinafter "Investigator"), as EEO Investigator for the United States Department of State.

9. On September 4, 2003, a "Report of Investigation" was submitted by the Investigator.

10. Said investigation was conducted by onsite and telephonic interviews, from July 1, 2003 to August 27, 2003.

11. Plaintiff acknowledges the "Report of Investigation" as an accurate depiction of events that transpired with regard to this matter, and hereinafter reports said factual information as listed below.

12. Plaintiff, a Bio-Medical Technician for the Rhode Island Hospital, applied for the position of Security Specialist, as a Junior Officer in the Foreign Service, and was subsequently provided a conditional letter of employment with the Bureau of Diplomatic

Security from the Department of State, dated November 21, 2001.

13. Plaintiff's condition requires him to see a neurologist every six months in order to ensure that the medication he is taking is effective.

14. The Plaintiff takes Zonogram and Depakote on a daily basis.

15. The State Department denied plaintiff a medical clearance for the worldwide availability.

16. The Plaintiff had spoken with Kumiko Cross (hereinafter "Ms. Cross"), former Chief of Medical Clearances, on October 16, 2002.

17. Ms. Cross told plaintiff that he was unqualified since he was not able to work worldwide, as there were no qualified neurologists in many foreign countries.

18. Plaintiff believes this is a "con", since, based on his understanding of State Department standards, there are only ten qualified neurologists outside of the United States and Canada.

19. Plaintiff subsequently applied for a waiver of the medical clearance requirement but was informed by letter from Bruce Cole, Deputy Director, Officer of Recruitment, Examination, and Employment, dated January 31, 2003, that a waiver had not been granted. The letter denying the waiver states a waiver was not in the best interest of the Foreign Service.

20. Plaintiff alleges that there was no reason why he should not have been granted medical clearance.

3

21. Plaintiff states it is illogical that he is able to pass his own doctor's medical tests yet cannot obtain a worldwide clearance.

22. The former Chief of Medical Clearances, made the initial decision to deny the Plaintiff a worldwide clearance.

23. She states that to be worldwide available means that one has no current identifiable medical, psychiatric, or educational condition that requires supervision or follow-up that would limit overseas assignments.

24. She states an individual must be able to serve in every post with no exceptions.

25. She states there are approximately 200 to 250 posts, with only approximately 150 having medical providers.

26. She further states that of the posts with medial providers, the care available varies from post to post.

27. Ms. Cross states that at the pre-employment stage, an application is issued a Class 1 clearance (worldwide availability), or a Class 5 clearance (not worldwide availability).

28. She states that in determining Plaintiff's medical clearance, she took into consideration all the information on the DS-1843 (physical examination form) and opinions received from four doctors, including Plaintiff's doctor.

29. Ms. Cross states Dr. Joyce Liporace, Jefferson Comprehensive Epilepsy Center, who had been monitoring Plaintiff's medical condition and ordering lab work for him, states that his prognoses was fair.

4

30. She states Dr. Glossner, who did a neuropsychological assessment, recommended anti-depressant therapy coupled with appropriate psychological counseling.

31. She states Dr. DeCastro, a staff consultant, met with Plaintiff and noted Plaintiff had been recommended to begin psychotherapy, which he had not begun.

32. She states Dr. DeCastro recommended a consultation with a phychopharmacologist and repeat evaluation by a neurologist, and states Plaintiff was not worldwide available.

33. She states Dr. Joseph Romeo, MED staff cardiologist, also stated Plaintiff is not worldwide available and would need to be assigned where there is a cardiologist and an adequate cardiac facility.

34. Ms. Cross states she decided Plaintiff would be issued a Class 5 medical clearance for several reasons: on the basis of Plaintiff's diagnosis of epilepsy, he would need continued oversight and follow-up for his condition; additionally, reports on his "personality changes," including irritability and hostility, and significant anxiety and depression, indicated Plaintiff would need continued oversight by a mental health provider. Her decision was also based on the Plaintiff's history of cardiac event in 2000 for which the Plaintiff would need oversight as well.

35. The denial by Defendant was made based only on Plaintiff's medical condition of epilepsy.

36. Ms. Cross states the fact that Plaintiff may have a disability is not a factor in determining whether Plaintiff was worldwide available.

37. She states as an example, if an individual is blind but in good health, he or she would receive a Class 1 medical clearance because there is no monitoring or follow-up

5

required.

38. She states the key question is whether an individual's physical or mental condition requires oversight, monitoring and/or follow-up.

39. Anne Saloom, current Director of Medical Clearances, states she presented a summary of the evaluation for Plaintiff's medical clearance to the Employment Review Committee for waiver consideration.

40. The summary indicates that Plaintiff has had epilepsy since the age of two, which worsened after a motor vehicle accident and cardiac illness.

41. Bruce L. Cole, Deputy Director, Office of Recruitment, states a candidate for the Foreign Service must be medically qualified for assignment worldwide at the time of his/her appointment, or obtained a waiver of the worldwide availability requirement. He states worldwide availability is an essential requirement for employment within the Foreign Service.

42. He states many of the Department of State posts overseas are remote, unhealthy, or have limited medical support, even for treatment that would be commonplace in the United States.

43. He states therefore, to be considered for service at such posts, each candidate must meet medical fitness standards which are, of necessity, often more rigorous than those of other professionals.

44. Mr. Cole states he participates in the Department's Employment Review Committee that reviews candidate requests for waiver of the worldwide availability requirement.

45. He states the committee is an advisory committee to the Deputy Assistant Secretary for

6

Human Resources who makes the decision on behalf of the Director General of the Foreign Service.

46. He states the Deputy Assistant Secretary and the committee review, upon request, the case of any Department of State Foreign Service candidate who is not medically qualified for worldwide assignment.

47. They then determine, based on the needs of the service, whether the candidate should be appointed despite the disqualification.

48. Mr. Cole states he represents the Office of Recruitment, Examination and Employment, i.e., the hiring office.

49. He states his role is to inform the committee about the person's skills, knowledge abilities.

50. He states he expresses views as to whether the "needs of the service" are such that the person's appointment would be in the Service's interest; he states this is also something that the Deputy Assistant Secretary and members of the committee discuss as they consider whether a waiver may be appropriate.

51. He states "needs of the service" might include, for example, special skills that are so unique as to offset the disadvantages of not being worldwide available.

52. Mr. Cole states that Plaintiff did request a waiver of the worldwide availability requirement.

53. Mr. Cole asserts the Employment Review Committee did not recommend that a waiver of the worldwide availability requirement be granted in this case given the fact that

7

health care services for Plaintiff's conditions could only be provided as a few posts.

54. He states that the Deputy Assistant Secretary for Human Resources did not grant a waiver.

55. The Investigator, Robert J. Medler, was informed no statistics are kept by the Department showing how many people were given a conditional offer of employment in the Foreign Service and subsequently were disqualified because they were unable to meet the worldwide availability requirement.

## COUNT I
### (DISABILITY DISCRIMINATION – TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AS AMENDED, 42 U.S.C. § 2000E-2 ET SEQ.)

56. Paragraphs 1 through 55 are herby incorporated by reference as if fully set forth herein.

57. Upon information and belief, Department of State Foreign Service, is subject to the requirements contained within Title VII of the Civil Rights Act of 1964 as amended, *42 U.S.C. § 2000E-2, et. seq.*

58. Lynn was a disabled individual and therefore part of a protected class.

59. Lynn was not given the reasonable accommodations that were requested and approved.

60. During the course of his application for employment as a Security Specialist, Junior Officer for the Department of State Foreign Service, Lynn was repeatedly subjected to harassment and offensive conduct due to his disability. The harassment continued throughout his period of initially applying for application to the present. The harassment

8

was perpetuated by the persons that had overseen the decision making process of the above-described events.

61. As a result of the Defendants actions, Plaintiff sustained damages including loss of future income, emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, cost of litigation and attorney fees.

## COUNT II
(TITLES I & V OF THE AMERICAN WITH DISABILITIES ACT OF 1990 AS AMENDED, 42 U.S.C. § 12010 ET SEQ.)

62. Paragraphs 1 through 61 are hereby incorporated by reference as if fully set forth herein.

63. Upon information and belief, the Department of State Foreign Service is subject to the requirements contained within Title I and V of the Americans with Disabilities Act of 1990 as amended, *42 U.S.C. § 12010, et. seq.*

64. Lynn was a disabled individual and therefore part of a protected class.

65. The actions of the Department of State Foreign Service, as aforesaid constitute discrimination against Lynn in employment on the basis of her disability within meaning of and in violation of Titles I & V of the Americans with Disabilities Act of 1990 as amended, *42 U.S.C. § 12010, et. seq.*

66. During the course of his application for employment as a Security Specialist, Junior Officer for the Department of State Foreign Service, Lynn was repeatedly subjected to harassment and offensive conduct due to his disability. The harassment continued throughout his period of initially applying for application to the present. The harassment was perpetuated by the persons that had overseen the decision making process of the above-described events.

9

67. As a result of the Defendants actions, Plaintiff sustained damages including loss of future income, emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, cost of litigation and attorney fees.

### COUNT III
### (RETALIATION – DISCRIMINATION – TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AS AMENDED, 42 U.S.C. § 2000E-2 ET SEQ.)

68. Paragraphs 1 through 67 are hereby incorporated by reference as if fully set forth herein.

69. Defendant, Department of State Foreign Service, retaliated against Plaintiff in violation of Title VII of the Civil Rights Act of 1964 as amended, *42 U.S.C. § 2000E-2, et. seq.* due to her filing a previous EEO claim.

70. The retaliation against Lynn took the form of treating him in a demeaning and hostile fashion, causing him to fail to qualify as an applicant for employment, and treating him differently than persons who did not file previous EEO claims.

71. As a result of the Defendant's actions, Plaintiff sustained damages including loss of future income, emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, cost of litigation and attorney fees.

### COUNT IV
### (TITLES I & V OF THE AMERICAN WITH DISABILITIES ACT OF 1990 AS AMENDED, *42 U.S.C. § 12010 ET SEQ.*)

72. Paragraphs 1 through 75 are hereby incorporated by reference as if fully set forth herein.

73. Defendant, Department of State Foreign Service, retaliated against Plaintiff in violation of Title I and V of the American with Disabilities Act of 1990 as amended, *42 U.S.C. §*

10

*12010, et. seq.* due to her filing a previous EEO claim

74. The retaliation against Lynn took the form of treating him in a demeaning and hostile fashion and treating her differently than persons who did not file previous EEO claims.

75. As a result of the Defendant's actions, Plaintiff sustained damages including loss of future income, emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, cost of litigation and attorney fees.

## REQUESTED RELIEF

Lynn requests the judgment of this Court against the Defendant as follows:

a. Rule for Plaintiff and against each Defendant as to all counts set forth in this complaint;

b. Find and hold that Lynn has been unlawfully discriminated against.

c. Find and hold that the Settlement Agreement signed by Lynn and the Department of State Foreign Service was breached.

d. Award Plaintiff damages in an appropriate amount of back-pay, future earnings, with related monetary benefits and interest thereon, plus attorneys fees, costs and interests resulting from violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and the American with Disabilities Act, 42 U.S.C. § 12102 *et seq.*

f. Award Plaintiff compensatory and punitive damages in an amount to be determined at the trial in the matter resulting from violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and the American with Disabilities Act, 42 U.S.C. § 12102 *et seq.*

g.  Award Plaintiff her attorneys' fees, including litigation expenses, and the cost of this action.

h.  Award such other and further relief as this Honorable Court deems just and proper.

>                                    PLAINTIFF,
>                                    MICHAEL LYNN
>                                    by his attorney
>
>                                    *[signature]*
>                                    BRUCE P. GLADSTEIN, ESQ. (#5272)
>                                    750 EAST AVENUE
>                                    PAWTUCKET, RI 02860
>                                    (401) 722-9900 telephone
>                                    (401) 722-9919 fax

Date Complaint Filed with Clerk: _____

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| MICHAEL G. LYNN,<br>    Plaintiff | )<br>)<br>) |
| v. | )    C. A. NO. 05-041T<br>) |
| COLIN POWELL, SECRETARY,<br>OF STATE FOR THE UNITED<br>STATES OF AMERICA<br>    Defendant | )<br>)<br>)<br>) |

PARTIES' JOINT MOTION TO TRANSFER
CASE TO THE DISTRICT OF COLUMBIA
BASED ON LACK OF VENUE IN THE
**DISTRICT OF RHODE ISLAND**

The parties, Plaintiff Michael G. Lynn and Defendant Colin Powell, Secretary of State for the United States of America, through undersigned counsel, hereby request the Court to enter an order transferring this case to the United States District Court for the District of Columbia. In support thereof, the parties state as follows:

1. Plaintiff Michael G. Lynn filed the instant case on February 3, 2005. Mr. Lynn's claims are brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., The Americans With Disabilities Act, 42 U.S.C. § 12101, et seq., ("ADA"), and the Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq.

2. The ADA and the Rehabilitation Act incorporate the procedural requirements of Title VII, including the venue provision. See 42 U.S.C. § 12117(a); 29 U.S.C. § 794a(a)(1); In Re Horseshoe Entertainment, 337 F.3d 429 (5th Cir. 2003); Bolar v. Frank, 938 F.2d 377 (2d Cir. 1991). Thus, venue for all of plaintiff's claims is governed by the Title VII venue provision.

3. Section 2000e-5(f)(3), Title VII's venue provision, provides that:

> Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this title [42 U.S.C. § 2000e et seq.]. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office. For purposes of sections 1404 and 1406 of title 28 of the United States Code, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought.

4. Mr. Lynn alleges that he applied for a job in the Foreign Service. The United States Department of State's has a "worldwide availability" policy, which requires candidates for Foreign Service positions to be medically cleared to serve anywhere in the world. He alleges that he was found not to be available throughout the world, and not hired, because he has epilepsy. He also alleges that the United States Department of State discriminated against him in refusing to grant him a waiver of that policy. The incidents of which he complains, the decisions regarding his application for employment and his request for a waiver of the worldwide availability policy, took place in Washington, D.C., and all of the relevant employment records are maintained in Washington, D.C. Accordingly, pursuant to 42 U.S.C. § 2000e-5(f)(3), venue is not proper in the District of Rhode Island.

4. Thus, pursuant to 28 U.S.C. 1406(a), the parties respectfully request that the Court transfer the case to the District of Columbia.

WHEREFORE, the parties respectfully request that the Court enter an order transferring the case to the United States District Court for the District of Columbia.

> Respectfully submitted,
>
> COUNSEL FOR DEFENDANTS:
>
> ROBERT CLARK CORRENTE
> UNITED STATES ATTORNEY
>
> _/s/ Anthony C. DiGioia_
> ANTHONY C. DIGIOIA
> ASSISTANT U.S. ATTORNEY
> United States Attorney's Office
> Fleet Center
> 50 Kennedy Plaza, 8th FL
> Providence, RI 02903
> (401) 709-5000

Dated: 5/25/05

> COUNSEL FOR PLAINTIFF:
>
> _/s/ Bruce Gladstein_
> BRUCE GLADSTEIN, ESQ.
> 750 East Avenue
> Pawtucket, RI 02860
> 401-722-9900

Dated: _____



| David A. DiMarzio<br>Clerk of Court | **UNITED STATES DISTRICT COURT**<br>*District of Rhode Island* | Paulette J. Dube<br>Chief Deputy Clerk |
|---|---|---|

June 27, 2005

Clerk of Court
United States District Court
for the District of Columbia
1834 E. Barrett Prettyman U.S. Court House
333 Constitution Ave., N.W.
Washington, DC 20001-2802

    *Re: CA05-41T Michael G. Lynn v. Colin Powell*

To Whom it May Concern:

    Enclosed please find certified copies of the record in the above-referenced matter. By Order of this Court, dated June 27th, 2005 the matter is hereby transferred to the United States District Court for the District of Columbia. Also enclosed for your records is a certified copy of the docket sheet in the matter and a copy of this letter for receipt and return to this office.

    If you should have any questions regarding this matter, please do not hesitate to call me at (401) 752-7210. Thank you in advance for your attention to this matter.

Very Truly Yours,


Ryan H. Jackson
Deputy Clerk

/rj
encl.